Alan J. RICHARDS and Sharon A. Richards, Husband and Wife, Robert J. Carroll and Barbara A. Carroll, Husband and Wife, Jeffrey P. Potocek and Gail N. Potocek, Husband and Wife, H. Kenneth Johnson and Diane E. Johnson, Husband and Wife, Appellants

v.

**BOROUGH OF COUDERSPORT ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Argued May 5, 2009.

Decided Aug. 14, 2009.

Reargument Denied Oct. 9, 2009.

Paul J. Malizia, Emporium, for appellants.

D. Bruce Cahilly, Coudersport, for appellee.

BEFORE: LEADBETTER, President Judge, COHN JUBELIRER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Alan J. and Sharon A. Richards, Robert J. and Barbara A. Carroll, and H. Kenneth and Diane E. Johnson (collectively, Objectors)[1] appeal from an order of the Court of Common Pleas of Potter County (trial court), which affirmed the decision of the Borough of Coudersport Zoning Hearing Board (Board) granting a variance, pursuant to Section 450–58 of the Borough of Coudersport Zoning Ordinance (Ordinance),[2] to the Potter County Department of Emergency Services (Applicant). The variance will allow Applicant to relocate two preexisting, nonconforming uses to a different area on the same contiguous parcel of land and expand upon those uses in order to implement necessary technological advances. On appeal, Objectors present several arguments asserting that the Board erred and/or abused its discretion in granting the requested variance. Concluding that no error of law or abuse of discretion was committed, we affirm.

## I. Facts and Procedural Posture

Potter County (the County) owns a parcel of land located at 7 Mockingbird Lane, Coudersport, Pennsylvania (the Property). The Property, which comprises 300 contiguous acres, is improved with several buildings and is zoned Residential (R). Applicant currently uses one of the buildings on the Property (Building 1) for its Emergency Management Services (EMS)/Public Service Answering Point (PSAP) Headquarters, which is a preexisting, nonconforming use. Applicant also currently maintains a communications tower,[3] which is a preexisting, nonconforming use, as an accessory structure to Building 1 on the Property.

---

1. Jeffrey P. and Gail N. Potocek also initially filed an appeal; however, their appeal has been discontinued.

2. Section 450–58 of the Ordinance provides as follows:

    Nonconforming uses may be increased in area or intensity when approved by the Zoning Hearing Board. A request to increase the area or intensity of a nonconforming use shall be administered as a variance. Before granting such a request, the Zoning Hearing Board must consider all significant relevant factors and determine that the increase in area or intensity will not materially add to the deleterious effect of the use upon nearby property and uses or upon the community.
    (Ordinance § 450–58.)

3. The exact size and nature of the existing communications tower is unclear from the record.

On December 18, 2007, Applicant requested a variance to relocate its EMS/PSAP Headquarters use to another existing building on the Property (Building 2) and to relocate its communications tower use to the north side of Building 2. Through the variance, Applicant also sought to expand upon its existing uses by erecting a new, 120 ft. communications tower, a shelter, and two generators adjacent to Building 2.

Building 2 is located approximately 300 ft. from Building 1, and the two buildings are separated by Maple View Lane, a driveway owned by the County. Building 2 is currently vacant; however, it was previously used by the County as a mental health facility, which was also a preexisting, nonconforming use.

The Richards reside directly across from Building 2 on Mockingbird Lane. The Carrolls and the Johnsons live to the south of Building 2 on the same side of Mockingbird Lane as the Property. The Carroll home is separated from Building 2 by three other homes, and the Johnson home is separated from Building 2 by four other homes, including the Carroll home.

On January 28, 2008, the Board held a hearing on Applicant's variance request. At the hearing, Michael Menard, the individual who surveyed the Property and prepared the site plans for the requested variance, and John Hetrick, Applicant's Director, testified on behalf of Applicant. Mr. Johnson and Mr. Richards testified in opposition to the requested variance.

Mr. Menard testified that Applicant needs to move to a new facility in order to expand and keep up with necessary technological advances. Mr. Menard testified that Applicant desires to relocate the EMS/PSAP Headquarters to Building 2 and construct a 120 ft. communications tower on the north side of Building 2, as well as an accompanying shelter and generators. Mr. Menard explained that the proposed communications tower will be the hub for a system of six other towers being constructed throughout the County. Mr. Menard testified that Building 1 is not suitable to meet Applicant's needs because: Building 1 is located within the floodplain; Building 1 does not allow for expansion to incorporate the necessary technological upgrades; and Building 1 does not allow for appropriate security fencing to be installed. Mr. Menard explained that the presence of a stream near Building 1 presents possible flooding issues and that many of the underground utility lines at Building 1 would need to be changed to allow for the construction of the communications tower and the shelter. Mr. Menard also explained that there is insufficient available space next to Building 1 for the proposed communications tower, shelter, and generators, which need to be located next to each other. Mr. Menard testified that these issues are not present at Building 2. Mr. Menard further testified that it would be more difficult and costly to construct a new EMS/PSAP Headquarters elsewhere on the Property, instead of relocating to Building 2, because of excavation and infrastructure issues. Additionally, Mr. Menard testified that he did not believe that the proposed relocation and expansion would cause traffic or safety issues.

Mr. Hetrick testified that Applicant's desire to move its EMS/PSAP Headquarters was motivated by the Act 56[4] statewide initiative, which requires every county in the Commonwealth to become "Phase

4. We note that Mr. Hetrick appears to be referring to the Act of December 30, 2003, P.L. 384, No. 56, which amended the Pennsylvania Public Safety Emergency Telephone Act, *as amended,* 35 P.S. §§ 7011—7021.13.

II compliant." (Board Hr'g Tr. at 8.) Mr. Hetrick explained that becoming "Phase II Compliant" means "the ability for the PSAP, the Public Service Answering Point, to be able to answer and process wireless phone calls." (Board Hr'g Tr. at 8.) Mr. Hetrick testified that the new EMS/PSAP Headquarters and communications tower will enable wireless phone calls to be received and processed. Mr. Hetrick also testified regarding the need to have the proposed communications tower, shelter, and generators located near the EMS/PSAP Headquarters, and the lack of any traffic and safety issues posed by the proposed relocation and expansion.

Mr. Johnson testified as to his concerns that the presence of the proposed communications tower would be detrimental to the health and safety of the neighboring landowners. Specifically, Mr. Johnson testified that he believed that the microwaves emitted from the communications tower will cause increases in blood sugar as well as problems with pacemakers. Mr. Johnson also questioned whether the microwaves emitted from the communications tower could have other adverse health effects, such as causing cancer. Mr. Johnson explained that, while he is not against the EMS/PSAP Headquarters being upgraded for better communications, he feels that it is inappropriate for the proposed communications tower to be placed in the middle of a residential community. Mr. Richards expressed concerns about the proposed communications tower falling on his property. In addition, Mr. Richards expressed concerns about the presence of the communications tower detracting from the aesthetics of his property and negatively impacting the value of his property.

At the conclusion of the hearing, the Board voted 2 to 1 to grant the requested variance. The Board subsequently issued a written decision in support of its determination. In its decision, the Board made findings of fact, which summarized the testimony and evidence presented, and then stated the following:

### Conclusion of Law

The extension of a nonconforming use for the expansion of the Emergency Management Services facility in an area zoned residential first requires the grant of a variance from the ... Board. Before granting such a variance the Board must consider all significant relevant factors and determine this increase or change in the nonconforming use will not materially add to the deleterious effect of the use upon nearby property and uses or upon the community.

### Decision

The applicant's request for a variance was granted by a two to one vote (Gregg Morey in dissent) subject to the following limitations: there shall be no fencing along the front of the building and the applicant shall install landscaping so as to create noise and sight barriers between the fencing and equipment on site and the adjoining homes. Those voting in favor of the grant of variance determined that the intended project will benefit the health, safety and welfare of the community, and its benefits outweigh the potential negative impact expressed by neighboring residents.

(Board Decision at 3–4.)

Objectors appealed the Board's decision to the trial court, arguing that the Board had erred and/or abused its discretion in granting Applicant the requested variance. Without accepting any additional evidence, the trial court issued an opinion and order affirming the Board's decision. In its opinion, the trial court explained that, in order to expand a nonconforming use, Applicant was required to obtain a variance

and that Applicant had satisfied all of the applicable requirements for obtaining a variance. The trial court also rejected Objectors' argument that Applicant's requested variance could not be treated as an expansion of a nonconforming use because the preexisting, nonconforming use of Building 2 as a mental health facility was a different use, which had been abandoned. In rejecting this argument, the trial court explained:

> [T]his reasoning fails to take into account that the County has been using a separate building on the very same tract of land continuously as the E.M.S. headquarters. At no time was this use abandoned. The proposed move of the E.M.S. headquarters to the old mental health facility is a part of the petition for the variance to expand the nonconforming use that was granted by the Zoning Hearing Board. Pennsylvania Courts have upheld grants for variances to expand nonconforming uses to different parts of the same contiguous parcel of land. In fact, in *Whitpain [Township Board of Supervisors v. Whitpain Township Zoning Hearing Board*, 121 Pa.Cmwlth. 418, 550 A.2d 1355 (1988)], the Commonwealth Court upheld a variance to allow an airport, which existed as a nonconforming use, to expand a runway onto property acquired after the zoning law had been enacted.

(Trial Ct. Op. at 6.) Objectors now appeal to this Court.[5]

## II. Discussion

On appeal, Objectors argue that the trial court erred in affirming the Board's decision granting Applicant's variance request because: (1) neither the proposed use of the Property nor the height of the proposed communications tower is permitted by the Ordinance; (2) Applicant's variance request was misconstrued as a request for the expansion of a nonconforming use; and (3) the decisions permitting the variance were based solely on the finding that the proposed EMS/PSAP Headquarters and communications tower would benefit the health, safety, and general welfare of the County's citizens.[6] We will address each of these arguments, in turn, below.

### Proposed Use of Property and Height of Communications Tower Not Permitted

Objectors first argue that the Board abused its discretion because the proposed use of the Property is not permitted in an R zoning district under the terms of the Ordinance. Objectors contend that the only permitted uses in an R zoning district are dwellings and mobile homes. (*See* Ordinance § 450–12.) Objectors concede that the Ordinance does permit "[c]ommunity buildings" to be constructed in an R zoning district by special exception. (Ordinance § 450–13.) However, Objectors contend that neither the proposed EMS/PSAP Headquarters nor the proposed communications tower constitute a community building. According to Objectors, this term refers to facilities such as those used for recreation, a senior center, a chamber of commerce, or a visitor's center. Objectors assert that the proposed EMS/PSAP Headquarters and communications tower are more appropriately classified as

---

5. In a land use appeal from a decision of a zoning hearing board where the trial court relies solely on the record made before the board and receives no additional evidence, this Court's review is limited to determining whether the board committed an abuse of discretion or an error of law. *Elizabeth-*

*town/Mount Joy Associates, L.P. v. Mount Joy Township Zoning Hearing Board*, 934 A.2d 759, 763 n. 5 (Pa.Cmwlth.2007).

6. For organizational purposes, we have reordered Objectors' arguments.

"[p]ublic or governmental utility structure[s] or facilit[ies]," which are permitted by special exception in an Agricultural–Residential (AR) zoning district. (Ordinance § 450–37(B)(3).)

■■■ We disagree with Objectors that the Board abused its discretion on the basis that the proposed use of the Property is not a permitted use or a use permitted by special exception in an R zoning district. Objectors do not dispute that Applicant used the Property, in part, for its existing EMS/PSAP Headquarters and communications tower prior to the enactment of the Ordinance. Because the EMS/PSAP Headquarters and communications tower uses existed prior to the enactment of the Ordinance, those uses are considered preexisting, nonconforming uses. *See Heyman v. Zoning Hearing Board of Abington Township*, 144 Pa. Cmwlth. 167, 601 A.2d 414, 416 (1991) (stating that a prior nonconforming use is established where "objective evidence [shows] that the land was devoted to such use at the time the ordinance was enacted"). Section 450–56 of the Ordinance [7] permits Applicant to continue with these uses, despite the fact that they are not otherwise permitted in an R zoning district. This is consistent with Pennsylvania law, which recognizes that "the owner of property to which a lawful nonconforming use has attached enjoys a vested property right." *Pappas v. Zoning Board of Adjustment*, 527 Pa. 149, 152, 589 A.2d 675, 676 (1991) (quoting *Gross v. Zoning Board of Adjustment of the City of Philadelphia*, 424 Pa. 603, 607, 227 A.2d 824, 827 (1967)). Moreover, Section 450–58 of the Ordinance allows for the expansion of preexisting,

nonconforming uses through a variance. This is also consistent with Pennsylvania law, which recognizes that "[t]he right to expand a nonconforming use to provide for the natural expansion and accommodation of increased trade 'is a constitutional right protected by the due process clause.' " *Jenkintown Towing Service v. Zoning Hearing Board of Upper Moreland Township*, 67 Pa.Cmwlth. 183, 446 A.2d 716, 718 (1982) (quoting *Silver v. Zoning Board of Adjustment*, 435 Pa. 99, 102, 255 A.2d 506, 507 (1969)). What Applicant seeks to do here is move its existing EMS/PSAP Headquarters and communications tower uses from their current location on the Property to a different location on the Property and expand upon those uses pursuant to Section 450–58 of the Ordinance. Under these circumstances, it was irrelevant that the proposed EMS/PSAP Headquarters and communications tower uses are not listed in the Ordinance as permitted uses or uses permitted by special exception in an R zoning district. Instead, the relevant question here was whether Applicant was entitled to relocate and expand upon its preexisting, nonconforming uses. The Board appropriately focused its determination on this question. Thus, Objectors' argument, that the Board abused its discretion because the proposed use of the Property is not a permitted use or a use permitted by special exception, is without merit.

Objectors also argue that the Board abused its discretion in granting the variance because the height of the proposed communications tower is not permitted in an R zoning district. Objectors assert that Section 450–15F limits the height of build-

---

7. Section 450–56 of the Ordinance provides:
   The lawful use of a building or structure or the lawful use of any land as existing and lawful at the time of enactment of this chapter, or of an amendment thereto, may be continued except as hereinafter provided, although such use does not conform with the provisions of such ordinance or amendment.
   (Ordinance § 450–56.)

ings in an R zoning district to 35 ft. Objectors contend that Section 450–9 allows for an additional 4 feet for "towers, masts and aerials," which results in a total maximum height of 39 feet, but that the proposed communications tower has a height of 120 feet and, thus, is clearly not permitted in an R zoning district.

■ We again disagree. Objectors misinterpret Section 450–9 of the Ordinance, which provides:

> Height limitations stipulated elsewhere in this chapter shall not apply to open amusement areas, barns, silos, school or church spires, belfries, cupolas and domes, monuments, water towers, utility poles, chimneys, flagpoles, satellite dishes, radio and television towers, masts and aerials; or to parapet walls extending not more than four feet above the limiting height of the building.

(Ordinance § 450–9.) Section 450–9 creates an exception to any height limitations imposed elsewhere in the Ordinance for, among other things, "radio ... towers, masts and aerials." (Ordinance § 450–9.) Contrary to Objectors' contention, Section 450–9 does not limit the height of "radio ... towers, masts and aerials" to an additional 4 ft. Instead, that limitation only applies to parapet walls. Given the exception set forth in Section 450–9, the Ordinance does not prohibit the proposed 120 ft. communications tower from being constructed in an R zoning district, and we find no merit to this argument.

### Variance Request Misconstrued as Request for Expansion of Nonconforming Use

Objectors next argue that the Board erred and/or abused its discretion by misconstruing Applicant's variance request as a request for the expansion of a nonconforming use. Objectors contend that, under Section 450–57 [8] of the Ordinance, nonconforming uses may only be expanded within the same buildings, and not to other buildings or other parts of the land. Objectors assert that this is consistent with precedent of this Court, which establishes that a nonconforming use may not be expanded from one building to a different building or another location on the same parcel of land. As support for this assertion, Objectors rely on *R.K. Kibblehouse Quarries v. Marlborough Township Zoning Hearing Board,* 157 Pa.Cmwlth. 630, 630 A.2d 937 (1993); *Overstreet v. Zoning Hearing Board of Schuylkill Township,* 49 Pa.Cmwlth. 397, 412 A.2d 169 (1980); and *Snyder v. Zoning Hearing Board, Borough of Zelienople,* 20 Pa.Cmwlth. 139, 341 A.2d 546 (1975). Alternatively, Objectors contend that even if Applicant's variance request was properly construed as a request for an expansion of a non-conforming use, the Board abused its discretion in granting the variance request because the only protected nonconforming use of Building 2 would have been as a mental health facility, which use has been abandoned.

We disagree with Objectors that the Board misconstrued Applicant's variance request. Although Objectors are correct that Section 450–57 of the Ordinance only permits the expansion of nonconforming uses within buildings, Objectors fail to recognize that Section 450–57 deals only with expansions of nonconforming uses that are permitted as of right. As discussed above, Applicant filed its variance request pursuant to Section 450–58 of the Ordinance.

---

8. Section 450–57 provides that: "Nonconforming uses shall not be increased in area or intensity except that a nonconforming use of a structure may be extended throughout any parts of the structure that were manifestly arranged or designed for such use at the time of adoption of this chapter." (Ordinance § 450–57.)

Section 450–58 provides, in pertinent part, that "[n]onconforming uses may be increased in area or intensity when approved by the Zoning Hearing Board. A request to increase the area or intensity of a nonconforming use shall be administered as a variance." (Ordinance § 450–58.) Thus, Section 450–58 allows nonconforming uses to be expanded beyond the walls of a building when Board approval is obtained and specifically directs that requests for such expansions are to be administered as a variance.

Moreover, Pennsylvania has a "well-established doctrine allowing the expansion of non-conforming uses ... [to] accommodate[ ] the needs of natural expansion and increased trade." *Amoco Oil Co. v. Ross Township Zoning Hearing Board*, 57 Pa. Cmwlth. 376, 426 A.2d 728, 730 (1981). The Pennsylvania Supreme Court has made clear that, while the doctrine of natural expansion does not permit a landowner, as of right, to expand a nonconforming use to buildings or areas of land not previously devoted to the furtherance of that use at the time of enactment of the zoning ordinance, a landowner may seek a variance for that purpose. *Mack Zoning Appeal*, 384 Pa. 586, 589, 122 A.2d 48, 50 (1956); *Peirce Appeal*, 384 Pa. 100, 106, 119 A.2d 506, 510 (1956). This is precisely what Applicant did in this case. Applicant filed a variance seeking to relocate and expand upon its nonconforming uses in a different area of the Property that was not previously devoted to the furtherance of the EMS/PSAP Headquarters and communications tower uses.

Furthermore, Objectors' reliance on *R.K. Kibblehouse*, *Overstreet*, and *Snyder* is misplaced. *R.K. Kibblehouse* and *Overstreet* dealt primarily with the argument that the landowners should be permitted to expand upon their nonconforming uses as a matter of right. In order to succeed on that theory, the landowners were required to establish that the land where they were seeking to expand their nonconforming uses had previously been devoted to the furtherance of the nonconforming uses; however, the landowners failed to provide the requisite proof establishing that the land was previously devoted to the furtherance of the nonconforming uses, and they were not permitted to expand their nonconforming uses as of right. *R.K Kibblehouse*, 630 A.2d at 942–44; *Overstreet*, 412 A.2d at 172. Here, unlike in *R.K. Kibblehouse* and *Overstreet*, Applicant did not claim that it was entitled to expand its nonconforming uses as of right, but instead filed a variance seeking permission from the Board for the expansion. As discussed above, this was the proper remedy. *Mack Zoning Appeal*; *Peirce Appeal.*

■ Additionally, in *Snyder*, the landowner, through a variance, sought permission to expand a nonconforming use onto a different parcel of land purchased after the enactment of the zoning ordinance, but the landowner was denied permission to expand because he failed to satisfy the criteria for obtaining a variance. *Snyder*, 341 A.2d at 547–48. Thus, *Snyder* is factually distinguishable from the present case because, unlike in *Snyder*, Applicant here seeks to expand onto a different portion of a contiguous parcel of land that was owned by the County at the time of the enactment of the Ordinance. Further, despite this factual distinction, *Snyder* actually supports that a variance is the appropriate remedy to expand a nonconforming use onto land not previously devoted to the furtherance of the nonconforming use. We note that the remedy of a variance was also recognized by this Court in *Overstreet* in response to an alternative argument raised by the landowner. *Overstreet*, 412 A.2d at 172. Therefore, we conclude that

the Board did not err and/or abuse its discretion in construing Applicant's variance request as a request for an expansion of a nonconforming use.

We also disagree with Objectors' alternative argument that the Board abused its discretion in granting the requested variance on the basis that Building 2 had a different nonconforming use, which has been abandoned. As the trial court correctly observed, Objectors' argument ignores that the EMS/PSAP Headquarters and communications tower uses are also preexisting, nonconforming uses and that these nonconforming uses have never been abandoned. Based on the existing precedent discussed above, Applicant was entitled to relocate and expand upon its EMS/PSAP Headquarters and communications tower nonconforming uses at Building 2, as long as it satisfied the criteria for obtaining a variance. *Mack Zoning Appeal; Peirce Appeal.* It is irrelevant that Building 2 was previously used for a different nonconforming use, which has since been abandoned. Building 2 is no different than any other building or land involved in our existing case law that was not devoted to the furtherance of the particular nonconforming use sought to be expanded at the time the relevant zoning ordinance was enacted. Therefore, we conclude that the Board did not abuse its discretion on the basis asserted by Objectors.

### Decisions Permitting Variance Based Solely on Finding that Proposed Uses would Benefit the Health, Safety, and General Welfare of the County's Citizens

■ Finally, Objectors argue that the Board erred in granting the variance because the decision was based solely on the

finding that the proposed EMS/PSAP Headquarters and communications tower would benefit the health, safety, and general welfare of citizens throughout the County. Objectors contend that, in *Township of East Caln v. Zoning Hearing Board,* 915 A.2d 1249 (Pa.Cmwlth.2007), this Court reversed the decisions of the court of common pleas and the zoning hearing board because they were based solely upon a finding that a variance allowing a larger communications tower to be constructed to resolve a wireless service coverage gap would be beneficial to the public. Objectors assert that we should similarly reverse the decisions of the trial court and the Board in this case. Objectors contend that Applicant could have constructed a new EMS/PSAP Headquarters and communications tower elsewhere on the Property and that the decision to relocate to Building 2 was based purely on cost. We disagree.

The record supports that the Board based its determination on Applicant's satisfaction of the criteria for obtaining a variance set forth in Section 910.2(a) of the Pennsylvania Municipalities Planning Code (MPC)[9] and Section 450–58 of the Ordinance. Under Section 910.2(a), an applicant must establish the following in order to obtain a variance:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordi-

---

9. Act of July 31, 1968, P.L. 805, *as amended,* added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2(a).

nance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. § 10910.2(a).

With regard to the first requirement set forth above, this Court has explained that:

> The nonconforming use variance decisions have uniformly assumed, with little or no discussion, the existence of "unique physical ... conditions," necessarily indicating that the pre-existing nonconforming use itself constitutes the physical "circumstances" which, apart from other lot or land characteristics, make the property uniquely different from others in the district.

*Jenkintown Towing Service*, 446 A.2d at 720.

As the trial court correctly observed, based on our precedent, the EMS/PSAP Headquarters and communications tower nonconforming uses of the Property satisfy this first requirement. Additionally, we note that Mr. Menard testified as to the presence of a stream that posed possible flooding issues and prevented Applicant from expanding at the current location on the Property. (Board Hr'g Tr. at 7, 22–23.) We also note that Mr. Menard testified as to excavation and infrastructure issues that interfered with Applicant's ability to relocate and expand upon its EMS/PSAP Headquarters and communications tower uses elsewhere on the Property, which is located on the side of a hill. (Board Hr'g Tr. at 8, 20–21, 38.) We believe that Mr. Menard's testimony supports that there are physical circumstances, unique to the Property, which contributed to the hardship in this case.

Moreover, this Court has recognized that, in cases involving expansion of a nonconforming use, modernization or expansion of a business will satisfy the second requirement set forth above where "the expansion or modernization ... [is] a matter of necessity for the business rather than merely to take advantage of an increase in business." *Jenkintown Towing Service*, 446 A.2d at 724. Here, as the trial court correctly observed, the record supports that the relocation and expansion of the EMS/PSAP Headquarters and communications tower uses is a matter of necessity. Mr. Menard testified that Applicant needs to relocate and expand upon its EMS/PSAP Headquarters and communications tower uses in order to keep up with necessary technological advances. (Board Hr'g Tr. at 2–3.) Mr. Hetrick testified that the expansion will enable Applicant to receive and process wireless telephone calls, which is necessary for Applicant to become Phase II compliant under the Act 56 statewide initiative. (Board Hr'g Tr. at 6–10.)

As to the third requirement set forth above, this Court has explained that "[a] lawful nonconforming use, established before any prohibition can be known, does

not invoke this [requirement], unless a landowner knowingly takes subsequent action to place obstacles in the way of expansion." *Jenkintown Towing Service*, 446 A.2d at 722. Here, there is no indication in the record that Applicant knowingly took action to place obstacles in the way of expansion. Thus, as the trial court correctly observed, this requirement does not apply in this case.

Furthermore, under the fourth requirement set forth above, an applicant for a variance is required to establish that the requested variance would neither alter the essential character of the neighborhood, nor substantially impair the use of neighboring property, nor be detrimental to the public welfare. Here, the current EMS/PSAP Headquarters and communications tower are located only about 300 ft. away from where Applicant seeks to relocate and expand upon those uses. (Board Hr'g Tr. at 3.) While we understand Objectors' concern that the size of the communications tower will increase, the record supports that the uses which already occur on the Property will not really change and that the essential character of the neighborhood will not be altered. Also, Mr. Menard and Mr. Hetrick both testified that the proposed relocation and expansion will not pose traffic or safety issues. (Board Hr'g Tr. at 18–20, 36–37, 56, 62–63.) Thus, the record supports that the requested variance will neither substantially impair the use of neighboring property, nor be detrimental to the public welfare.

With regard to the fifth requirement set forth above, an applicant for a variance must show that the relief requested is the minimum necessary. Here, the testimony of Mr. Menard and Mr. Hetrick establishes that relocating the EMS/PSAP Headquarters and communications tower uses to Building 2 is the minimum necessary to allow Applicant to make the neces-

sary technological upgrades in order to become Phase II Compliant. (Board Hr'g Tr. at 7–8, 11–12, 20–23, 38, 57–58.) Therefore, the record supports that Applicant satisfied all of the relevant criteria for obtaining a variance under Section 910.2(a).

In addition to satisfying the relevant criteria under Section 910.2(a), Applicant was required to satisfy the requirements of the Ordinance. Section 450–58 of the Ordinance required Applicant to establish that "the increase in area or intensity will not materially add to the deleterious effect of the use upon nearby property and uses or upon the community." (Ordinance § 450–58.) The Board specifically found that "the intended project will benefit the health, safety and welfare of the community, and its benefits outweigh the potential negative impact expressed by neighboring residents." (Board Decision at 4.) As the trial court correctly observed, this finding is supported by the record. Mr. Menard and Mr. Hetrick both testified that the proposed relocation and expansion will not cause traffic and safety issues. (Board Hr'g Tr. at 18–20, 36–37, 56, 62–63.) Further, Mr. Menard and Mr. Hetrick testified that the proposed relocation and expansion will allow for technological upgrades to be made that will enhance the emergency services provided by Applicant. (Board Hr'g Tr. at 2–3, 6–10.) It was within the province of the Board, as fact-finder, to determine the appropriate weight to be given to the testimony presented, and this Court will not substitute its judgment for that of the Board. *Tennyson v. Zoning Hearing Board of West Bradford Township*, 952 A.2d 739, 743 n. 5 (Pa.Cmwlth.2008).

Objectors' reliance on this Court's decision in *East Caln* is misplaced. In *East Caln*, Cingular Wireless (Cingular) received conditional use approval to con-

struct a 103–foot communications tower on a property that was zoned Office, Commercial (OC–1). *East Caln,* 915 A.2d at 1250. Cingular later filed an application for a dimensional variance seeking to replace the 103–foot communications tower with a 123–foot tower to resolve a coverage gap. *Id.* The OC–1 zoning district had a maximum height restriction of 35 feet. *Id.* The zoning hearing board in that case conditionally granted the variance, finding an unnecessary hardship on the basis that the coverage gap "present[ed] a significant life-safety issue that interferes with proper function of the enhanced 911 emergency tracking and response to mobile phone users in that specific geographic area." *Id.* at 1251. The zoning hearing board conditioned the grant of the variance on Cingular obtaining an amendment to the prior conditional use approval, which only authorized a tower of 103 feet. *Id.* The township appealed, and the court of common pleas affirmed the grant of the variance. *Id.* at 1252. However, this Court reversed, concluding that the zoning hearing board erred because it "based its finding of unnecessary hardship solely upon the life-safety issue posed by the coverage area gap in Cingular's wireless service," and the record did not support that Cingular satisfied the criteria for obtaining a variance. *Id.* at 1254. Unlike in *East Caln,* which involved a request for a dimensional variance to alter a conditional use, the variance at issue in this case was to relocate and expand upon preexisting, nonconforming uses, and the record here supports that Applicant satisfied the relevant criteria for obtaining a variance.

Because the record supports that Applicant satisfied the relevant criteria for obtaining a variance, we discern no error of law or abuse discretion.

### III. Conclusion

Ultimately, we conclude that the Board did not commit an error of law or abuse its discretion in granting Applicant a variance to relocate and expand upon its EMS/PSAP Headquarters and communications tower uses. We also conclude that the trial court did not commit an error of law or abuse its discretion in affirming the Board's grant of the requested variance. Accordingly, the trial court's order is affirmed.

### O R D E R

**NOW,** August 14, 2009, the order of the Court of Common Pleas of Potter County in the above-captioned matter is hereby affirmed.

