## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Jeffrey A. Omatick | : |
| | : |
| v. | : |
| | : |
| Cecil Township Zoning | : |
| Hearing Board | : |
| | : |
| v. | : |
| | : |
| Cecil Township Board of | : |
| Supervisors, | :     No. 920 C.D. 2021 |
| Appellant | :     Argued: May 16, 2022 |


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION BY
JUDGE COVEY                                    FILED: November 30, 2022

Cecil Township (Township) Board of Supervisors (Appellant)[1] appeals from the Washington County Common Pleas Court's (trial court) July 19, 2021 order reversing and vacating the Township's Zoning Hearing Board's (ZHB) decision that denied Jeffrey A. Omatick's (Applicant) application. Therein, Applicant requested to use his mobile home as a lawful nonconforming use[2] on the R-1 Low Density Residential District (R-1 District) portion (R-1 Portion) of a 41.44-acre split-zoned parcel located at 349 Grange Road, McDonald, Pennsylvania (Property), or, in the alternative, that the ZHB grant a variance for such use based on an alleged hardship on the R-4 Mobile Home Park Residential District (R-4 District) portion (R-4

---

[1] The Township's Zoning Hearing Board joined in Appellant's brief to this Court.

[2] "A lawful nonconforming use is a use that predates the enactment of a prohibitory zoning restriction." *Sowich v. Zoning Hearing Bd. of Brown Twp.*, 245 A.3d 1188, 1195 (Pa. Cmwlth. 2021).

Portion) of his Property (Application). Appellant presents three issues for this Court's review: whether the trial court erred and/or abused its discretion by: (1) disturbing the ZHB's factual findings and credibility determinations; (2) raising an issue *sua sponte*, and reversing the ZHB's determination based thereon; and (3) reversing and vacating the ZHB's decision rather than vacating the decision and remanding the matter to the ZHB.[3] After review, this Court reverses.

**Background**

The Township enacted its Unified Development Ordinance[4] (UDO) on or about May 17, 2000. *See* Reproduced Record (R.R.) at 7a-137a. In November 2000, Applicant's parents deeded the Property to him.[5] The Property is located in the R-1 District and the R-4 District in the Township. Applicant's residence is located on the R-1 Portion,[6] and a mobile home park is located on the R-4 Portion. The R-4 Portion has continuously been used as a mobile home park since the 1980s.

In February 2018, after a landslide on the R-4 Portion impacted three of the nine mobile homes located thereon, Applicant requested two homeowners to vacate. Applicant owned the third impacted mobile home, which he planned to relocate to the R-1 Portion. In August 2018, Applicant applied to the Washington County Sewage Council for a 10-acre exception to sewage planning requirements on the basis that the proposed on-lot septic system would serve a residential structure on the R-1 Portion. *See* R.R. at 151a-152a.

---

[3] This Court has rephrased the issues for clarity.
[4] Cecil Township, Pa., Unified Development Ordinance, Ordinance No. 5-00, May 17, 2000, *as amended*, Oct. 8, 2007.
[5] Applicant's parents had owned the Property since approximately the 1960s. *See* R.R. at 249a.
[6] There has never been a second residence on the R-1 Portion.

On August 8, 2019, Applicant applied to the Township for a zoning and construction permit (Construction Permit), representing therein that he was "converting [a] mobile home into [a] storage area[.]" R.R. at 147a. The Township issued the Construction Permit. On August 21, 2019, Township Zoning Officer Elizabeth Ross (Officer Ross) sent Applicant a letter referencing the Township's recent Construction Permit and explaining that the Township had been made aware that Applicant had expressed his intention that the mobile home relocated to the R-1 Portion would be occupied. Officer Ross notified Applicant that such was not permissible, and further informed him that the Property was split-zoned between an R-1 District and an R-4 District;[7] Applicant's personal residence was located in the R-1 District; the proposed storage shed would also be located in the R-1 District; only one building could be used for residential purposes on the R-1 Portion; and the Township would investigate the mobile home's occupancy. *See* R.R. at 153a-154a.

On May 12, 2020, Officer Ross issued a Notice of Violation (Notice) to Applicant stating that the mobile home had been relocated to the R-1 Portion and was being used as a residence in violation of Section 1202 of the UDO.[8] *See* R.R. at 157a-158a. The Notice also informed Applicant that, in order to bring the Property into compliance, he must submit an application to the Township within 15 days to subdivide the Property. *See id.* Applicant requested an extension to submit the subdivision application, which the Township granted until July 10, 2020. However, Applicant did not submit a subdivision application. Rather, on June 24,

---

[7] Section 804 of the UDO states in relevant part: "Whenever a single lot greater than two acres in size is located within two or more different zoning districts, each portion of that lot shall be subject to all the regulations applicable to the district in which it is located." UDO § 804, R.R. at 97a.

[8] Section 1202 of the UDO provides that "[i]n no case shall there be more than one principal building used for residential purposes located on one property, except as otherwise provided in this Chapter for a Mobile Home Park, Planned Development, or Land Development." UDO § 1202, R.R. at 121a.

3

2020, Applicant filed the Application seeking the ZHB's approval "[f]or a continuance of a nonconforming usage for the [Property.]" R.R. at 138a. In the alternative, Applicant requested a variance based on an alleged hardship imposed by the 2018 landslide on the R-4 Portion. *See id*.

**Facts**

The ZHB held hearings on the Application on August 17 and September 21, 2020. At the August 17, 2020 ZHB hearing, Applicant's neighbor and friend Patricia Mowry (Mowry), although not an attorney, spoke on behalf of Applicant. While she asserted reasons why Applicant did not submit a subdivision application, no evidence was presented to support her assertions. Applicant testified that he did not want to subdivide the Property because his daughter, at some point, would inherit it all. After much discussion concerning the R-1 Portion and the R-4 Portion among the ZHB members, Mowry, and Applicant, Mowry stated that she was not aware of "split parceling" and stated she believed the use of the entire parcel was "nonconforming." R.R. at 192a. Thus, Mowry and Applicant requested a continuance so Applicant could be represented by an attorney, which the ZHB granted.

At the September 21, 2020 ZHB hearing, Applicant's counsel (Counsel) stated:

> Just so the [ZHB] understands the [A]pplication, for a continuation of a non[]conforming use a variance is not needed. So the first request would be that he be allowed to continue his – actually he has a right at law to continue his non[]conforming use. He could get an interpretation from the [ZHB] to continue his non[]conforming use. But even if he doesn't have that he could still continue it.
>
> The second request and alternative would be a variance as to the use of his [P]roperty.

4

R.R. at 244a-245a. After questioning from the ZHB concerning the lack of advertisement for a variance, Counsel repeated: "So again, I want you to understand, he doesn't need a variance to continue a non[]conforming use." R.R. at 246a. In trying to clarify what was before the ZHB, Counsel expressly stated: "[Applicant] is *not* seeking a subdivision at this time, I don't know what this is in reference to." R.R. at 248a (emphasis added). When questioned again regarding *whether Applicant was seeking a subdivision*, Counsel responded: "*Not at this point*. Not until he gets a determination from the [ZHB] on the continuation of his non[]conforming use." *Id.* (emphasis added).

> Applicant testified on direct examination, in relevant part:
>
> Q Now, recently did you have to relocate one of the trailers?
>
> A I bought it off the bank and moved my daughter into it. And had a landslide. [sic] Which I had to either take a loss because insurance would not cover it. [sic] So I decided to move it down below the hill to stable ground[;] I lost three trailers up there in the process of the landslide.
>
> Q And it's still on your same parcel of [P]roperty?
>
> A Yes.
>
> Q Okay. And did it move across a zoning line, though?
>
> A At the time I didn't know the zoning line was there. Apparently[,] it did.
>
> Q Okay. And were the soils unstable there where it used to be located?
>
> A Yes.
>
> Q And did that create a hardship for you with locating the trailer?
>
> A Yes.

5

Q And where you relocated it now does that have stable soil?

A Yes, it does.

Q And you are here today to ask the [ZHB] to be able to continue your non[]conforming use of that 42-acre parcel with the trailers on it?

A Yes, I am.

[Counsel] Okay. That's all the questions I have for [Applicant].

R.R. at 250a-251a. Counsel presented only one additional witness, Officer Ross, of whom Counsel solely inquired: "[W]ere there trailers there on that [P]roperty before it was zoned R-4?" R.R. at 280a. Officer Ross responded: "I believe so." *Id*.

Counsel's entire position before the ZHB was summed up when Township Solicitor Christopher Voltz, attempting to clarify Counsel's position, asked Counsel:

Q . . . . And maybe that's the point of this case. So is it your position that since the parcel existed prior to the zoning and that there were trailer homes on this entire parcel prior to the zoning that he is able to move the trailer homes anywhere on that parcel even after zoning is established?

A Yes, that is exactly right. Not only that, he can add trailer homes. . . .

R.R. at 277a. At the conclusion of the hearing, the ZHB voted unanimously to deny the Application and, thereafter, issued Findings of Fact, Conclusions of Law, and an Adjudication (Decision) in support thereof.

In its Decision, the ZHB found as a fact: "[A]t the time the [UDO] was enacted, the mobile home park was located in the R-4 [P]ortion . . . and the single[-]family residence owned by Applicant [] was located in the R-1 [P]ortion . . . ." R.R. at 365a. It also found that, "[a]t no time has there ever been a second single[-]family

6

residence located in the R-1 [P]ortion . . . ." R.R. at 366a. The ZHB concluded, in relevant part, that Applicant's "testimony confirmed that only one single[-]family residence existed on the R-1 [P]ortion . . . before and after the enactment of the [UDO] in 2000[,]" R.R. at 369a; thus, "the second mobile home that was installed on the R-1 [P]ortion . . . [was] not a nonconforming use." R.R. at 370a. The ZHB further concluded: "[E]ven if Applicant [] had demonstrated that there had been a preexisting nonconforming use on the Property, which he did not, he would not be permitted to move the mobile home from one location to another because he did not establish that he satisfied the requirements for a variance." R.R. at 372a. On October 6, 2020, Applicant appealed to the trial court, and the Township intervened.

On July 19, 2021, the trial court, without taking any additional evidence, reversed and vacated the ZHB's decision. The trial court *sua sponte* raised the issue of whether the mobile home was a *building* as defined by the UDO and, thus, whether Section 1202 of the UDO, which prohibits "more than one **principal building** used for residential purposes . . . on one property," barred Applicant from relocating it to the R-1 Portion. R.R. at 121a (emphasis added). The trial court concluded that, since the record lacked substantial evidence demonstrating that the mobile home was a *building* or a *principal building*, Applicant was not prohibited from placing the mobile home on the R-1 Portion. Appellant appealed to this Court.[9]

_____

[9] Appellate review of a decision of a zoning hearing board, where the trial court does not take any additional evidence, is limited to determining whether the [zoning hearing] board abused its discretion or committed an error of law. An abuse of discretion occurs where the [zoning hearing] board's findings are not supported by substantial evidence. Substantial evidence is such relevant evidence that a reasonable person would accept as adequate to support the conclusion reached.

*Friends of Lackawanna v. Dunmore Borough Zoning Hearing Bd.*, 186 A.3d 525, 531 n.6 (Pa. Cmwlth. 2018) (citations omitted). "**In deciding a question of law**, **our scope of review is**

## Discussion

Preliminarily, the trial court did not address the substantive issues raised on appeal because it *sua sponte* determined that the record lacked evidence to demonstrate that the relocated mobile home met the UDO's definition of a building. Notwithstanding that the trial court did not address the substantive issues, this Court may do so.

The ZHB's record is complete, the parties have fully briefed the issues, and only legal questions remain. Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b), pertains to cases **where**, **as here**, **a full and complete record was made before the ZHB**, and provides that the trial court reviews the ZHB's decision in an **appellate capacity**. Given the ZHB's complete record, the trial court below was to review the ZHB's decision for abuses of discretion and legal error, not act as fact-finder. Because this Court reviews the **ZHB's decision**, not the trial court's decision, and the issues before the Court "may be resolved as a matter of law based on the **existing record**, a remand is unnecessary." *41 Valley Assocs. v. Bd. of Supervisors of London Grove Twp.*, 882 A.2d 5, 17 (Pa. Cmwlth. 2005); *see also Bernotas v. Zoning Hearing Bd. of the City of Bethlehem*, 68 A.3d 1042 (Pa. Cmwlth. 2013). This statement is especially true where, as here, a remand would be an unnecessary use of judicial resources and impose added expenses on the parties.

This Court recently explained:

> [T]he [t]rial [c]ourt's [failure to address the issues] does not stand as an impediment to *our* ability to address [the] issue[s]. This is for two reasons: first, . . . it is the [zoning hearing b]oard's decision, rather than the [t]rial [c]ourt's, which we are inspecting for abuses of discretion and errors of law; second, th[e] issue[s] present[] question[s] of law, for which our "standard of review is *de novo* and . . . scope of review is plenary." *City of Clairton v. Zoning Hearing*

**plenary** and **standard of review is *de novo*.**" *Cook v. City of Phila. Civ. Serv. Comm'n*, 246 A.3d 347, 353 (Pa. Cmwlth. 2021) (emphasis added).

8

*Bd. of City of Clairton*, 246 A.3d 890, 897 n.8 (Pa. Cmwlth. 2021).

*AUUE, Inc. v. Borough of Jefferson Hills Zoning Hearing Bd.* (Pa. Cmwlth. No. 871 C.D. 2020, filed Aug. 9, 2021), slip op. at 14 n.8, *petition for allowance of appeal granted on other grounds*, (Pa. No. 329 WAL 2021, filed June 22, 2022); *see also Herbert v. W. Reading Borough Zoning Hearing Bd.* (Pa. Cmwlth. No. 1113 C.D. 2020, filed Oct. 14, 2021) (reversing the trial court's order that reversed the zoning hearing board's order denying the property owner's appeal from an enforcement notice.[10] There, "[t]he trial court's opinion did not address [various issues], but both sides . . . presented arguments on [them] in their briefs and [this Court addressed them] as . . . alternative ground[s] for reversal of the trial court's determination." *Id.*, slip op. at 11 n.11; *see also id.* at 7, n.7, 14 n.12).[11]

---

[10] Unreported decisions of this Court, while not binding, may be cited for their persuasive value. Section 414(a) of the Internal Operating Procedures of the Commonwealth Court, 210 Pa. Code § 69.414(a). *AUUE* and *Herbert* are cited for their persuasive value.

[11] Setting forth the law regarding trial court review of local agency decisions, the Dissent states: "Consistent with this legislative paradigm, **our general rule** has been to order a remand where the trial court has **overlooked**, **or refused** to address, the issues raised by the [A]ppellant." *Omatick v. Cecil Twp. Zoning Hearing Bd.*, ___ A.3d ___, ___ (Pa. Cmwlth. No. 920 C.D. 2021, filed Nov. 30, 2022) (Leavitt, S.J., Concurring/Dissenting), slip op. at 2 (emphasis added). The Dissent opines that a remand is necessary when a trial court *overlooks or refuses* to address an issue. However, here, the trial court did neither. Instead, it raised an issue *sua sponte* and reversed on that basis alone. Finally, the Dissent notes that *AUUE* and *Herbert* are anomalies, *see Omatick* (Leavitt, S.J., Concurring/Dissenting), slip op. at 2 n.2, when in fact those cases aptly applied the law as the Majority does herein. Accordingly, because there are only questions of law before this Court, the Majority properly addresses the issues, rather than remanding to the trial court.

Quoting the Pennsylvania Supreme Court's decision in *Chwatek v. Parks*, 299 A.2d 631 (Pa. 1972), the Dissent claims that "[t]his jurisprudential policy [of allowing a trial court to correct its errors] has been established by the Pennsylvania Supreme Court in decisions 'consistently' holding that 'issues not raised or passed upon in the court of original jurisdiction should *not be considered on appeal*,' and its refusal to 'depart[] from that rule.'" *Omatick* (Leavitt, S.J., Concurring/Dissenting), slip op. at 3 (footnote omitted) (quoting *Chwatek*, 299 A.3d at 633). Importantly, in zoning cases, where a complete record is made by the ZHB, the trial court **reviews the ZHB's decision in an appellate capacity**. Nevertheless, the Dissent **speculates** that "the trial court did not exercise its authority to take additional evidence **because** it decided that the true issue was whether a mobile home is even a building, not whether it was a principal building." *Id.* at 3 n.4 (emphasis added). Such is pure speculation, unsubstantiated by the record evidence.

Initially, "[i]t is well[-]settled law in Pennsylvania that a municipality may enact zoning ordinances reasonably restricting the property right to protect and promote the public health, safety[,] and welfare under its police power." *Woll v. Monaghan Twp.*, 948 A.2d 933, 938 (Pa. Cmwlth. 2008).

> A basic purpose of zoning is to ensure an orderly physical development of the city, borough, township or other community by confining particular uses of property to certain defined areas. With such a purpose nonconforming uses are inconsistent. The continuance of nonconforming uses under zoning ordinances is countenanced because it avoids the imposition of a hardship upon the property owner and because the refusal of the continuance of a nonconforming use would be of doubtful constitutionality.

---

Significantly, the Dissent cites *Department of Environmental Resources v. Marra*, 594 A.2d 646, 648 (Pa. 1991), *Therres v. Zoning Hearing Board of Borough of Rose Valley*, 947 A.2d 226 (Pa. Cmwlth. 2008), *Cook v. City of Philadelphia Civil Service Commission*, 201 A.3d 922, 929 (Pa. Cmwlth. 2019), and *Branton v. Nicholas Meat, LLC*, 159 A.3d 540 (Pa. Super. 2017), to support its position that a remand is required. However, *Marra* involved the Pennsylvania Supreme Court's review of this Court's order granting an injunction, not an appellate court's review of a local agency's decision where, the Court reviews the **local agency's** decision, not the trial court's. In *Therres*, the trial court quashed the appeals from two orders. This Court noted "that had [it] reversed the trial court's order **quashing the appeal**, the appropriate remedy would have been to remand the matter to the trial court for consideration of the merits." *Therres*, 947 A.2d at 233 n.6. Here, the trial court did not quash the appeal. Rather, it decided the merits of the appeal, albeit on an issue it raised *sua sponte*. In *Cook*, the trial court improperly dismissed the appellant's local agency appeal *sua sponte*, because the plaintiff failed to file a brief. Thus, the erroneous order was based on a procedural, rather than substantive, issue. Further, in *Cook*, the local agency did not hold a hearing, so **no record** could be filed in the trial court. Finally, unlike here, where this Court reviews the **ZHB's decision** for error, the *Cook* Court reviewed the trial court's decision. In *Branton*, unlike the instant matter, "[n]o party briefed or argued [the unaddressed] issue before [the appellate] Court." *Id*. at 540, 562 n.21. Further, *Branton* did not involve an appellate court's review of a local agency's decision where, as here, this Court reviews the ZHB's decision, rather than the trial court's decision.

Contrary to the Dissent's characterization that "[b]y deciding a local agency appeal in place of the court of common pleas, we deny an appellee his full appellate rights, which includes review by the trial court[,]" the trial court **did** review the ZHB's decision but erred. *Omatick* (Leavitt, S.J., Concurring/Dissenting), slip op. at 8. This Court now simply reviews the ZHB's decision, as it is required to do.

*Hanna v. Bd. of Adjustment of the Borough of Forest Hills*, 183 A.2d 539, 543 (Pa.

1962) (citation omitted).

> "A lawful nonconforming use is a use predating the enactment of a prohibitory zoning restriction." *DoMiJo, LLC v. McLain*, 41 A.3d 967, 972 (Pa. Cmwlth. 2012). However, "**[t]he right to maintain a pre[]existing nonconformity is available <u>only</u> for uses** that were lawful when they came into existence and **which existed when the ordinance took effect**." *Hager v. W*[.] *Rockhill T*[*wp.*] *Zoning Hearing B*[*d.*], 795 A.2d 1104, 1110 (Pa. Cmwlth. 2002). **<u>When</u> a lawful nonconforming use exists**, "the right to continue such use is afforded the constitutional protections of due process." *DoMiJo*, 41 A.3d at 972. Thus, "[a] municipality is without power to compel a change in the nature of a use where property was not restricted when purchased and is being used for a lawful use." *Paulson v. Zoning Hearing B*[*d.*] *of Wallace T*[*wp.*], 712 A.2d 785, 788, (Pa. Cmwlth. 1998). "[A] property owner's right to continue operating a legal nonconforming use on its property is an interest that runs with the land, so long as it is not abandoned." *DoMiJo*, 41 A.3d at 972.

*PAJ Ventures, LP v. Zoning Hearing Bd. of Moore Twp.*, 225 A.3d 891, 898 (Pa.

Cmwlth. 2020) (bold and underline emphasis added).

> The burden of proving the existence of a nonconforming use lies with the property owner. *Jones v. T*[*wp.*] *of N*[.] *Huntingdon Zoning Hearing B*[*d.*], . . . 467 A.2d 1206, 1207 ([Pa. Cmwlth.] 1983). To establish a prior nonconforming use, the property owner must provide "objective evidence that **the subject land was devoted to such use at the time the zoning ordinance was enacted**." *Smalley v. Zoning Hearing B*[*d.*] *of Middletown T*[*wp.*], . . . 834 A.2d 535, 538-39 ([Pa.] 2003). Satisfying this burden requires ["]conclusive proof by way of objective evidence of the precise extent, nature, time of creation[,] and continuation of the alleged nonconforming use." *Jones*, 467 A.2d at 1207.

*Sowich v. Zoning Hearing Bd. of Brown Twp.*, 245 A.3d 1188, 1195-96 (Pa. Cmwlth. 2021) (emphasis added).

Importantly, a nonconforming use "must not enlarge beyond its natural expectations, **nor can it be moved from its original setting**. To do either is not the original nonconforming use around which the zoning law was presumabl[y] designed, but rather a new venture, and new ventures must qualify under existing zoning laws." *Bachman v. Zoning Hearing Bd. of Bern Twp.*, 494 A.2d 1102, 1106 (Pa. 1985) (emphasis added). Thus, in *Malakoff v. Board of Adjustment of the City of Pittsburgh*, 456 A.2d 1110 (Pa. Cmwlth. 1983), this Court agreed with the appellant objectors that "since [a] **portion of the property** . . . had never before been devoted to a nonconforming use, and there are no provisions in the [zoning c]ode to allow that use as a special exception, [the proposed use] may only be accomplished by the grant of a variance." *Id*. at 1112 (emphasis added); *see also City of Phila. v. Angelone*, 280 A.2d 672, 677 (Pa. Cmwlth. 1971) ("Structures may be erected on open land previously devoted to a nonconforming use, as of right." "However, the erection of structures upon land not previously so used, may only be accomplished by way of variance, the requisites of which are hardship to the owner and absence of detriment to the public interest.").

### I. ZHB's Factual Findings and Credibility Determinations

Appellant first argues that the trial court erred and/or abused its discretion when it disturbed the ZHB's determinations regarding the Application. Specifically, Appellant contends that the ZHB properly denied the Application because it found that the relocated mobile home was a prohibited nonconforming use on the R-1 Portion, that Applicant failed to prove a *preexisting* nonconforming use on the R-1 Portion, and that Applicant did not satisfy the necessary variance criteria.

12

**A. Existence of a Preexisting Nonconforming Use**

Appellant asserts that the ZHB properly concluded that Applicant's mobile home use on the R-1 Portion is not a nonconforming use. Appellant references Applicant's acknowledgement that the mobile home's intended use is as a residence for Applicant's daughter.

> The intended use of the [mobile] home remains the same. [Applicant's] daughter lived in the [mobile] home before and his daughter intends to move back into the unit. . . . Alterations planned to the [mobile] home are to make it more ascetically [sic] appealing, and to match the surrounding structures on the [P]roperty.

R.R. at 141a. Appellant further references Applicant's admission during his testimony that the mobile home would be a second home on the Property, for his daughter. *See* R.R. at 187a. Appellant argues that there is no record evidence of a preexisting nonconforming use of multiple principal buildings for residential purposes, or mobile homes on the R-1 Portion. Accordingly, it contends that the ZHB did not err when it concluded that Applicant's mobile home relocation on the R-1 Portion for use as his daughter's residence would not be a nonconforming use given Section 1202 of the UDO's prohibition on "more than one principal building[12] used for residential purposes located on one property[.]" R.R. at 121a.

Applicant rejoins:

> [P]rior to the adoption of the [UDO], [Applicant's] father had placed mobile homes on the single parcel of [P]roperty. . . . With the adoption of the [UDO], the [T]ownship drew zoning lines around the mobile homes

---

[12] Applicant did not argue to either the ZHB or the trial court that the mobile home was not a *building* under the UDO, which defines such as "[a]ny structure . . . permanently affixed to land." UDO § 202, R.R. at 21a. Accordingly, apart from Officer Ross's testimony that the mobile home was "anchored down," R.R. at 287a, Appellant did not offer evidence that the mobile home, which is defined in the UDO as "[a] transportable, single[-]family dwelling . . . that . . . may be used with or without a permanent foundation[,]" was permanently affixed to the ground. UDO § 202, R.R. at 34a.

> and classified that land as R[-]4 while the rest of the parcel remained R[-]1. . . . [Applicant's] action of moving the mobile home merely continued the nonconforming use **of the single parcel of [P]roperty**.

Applicant Br. at 5 (emphasis added). Thus, Applicant contends that using any part of the Property before the passage of the UDO in a manner that would be nonconforming thereafter constitutes use on the entire parcel and renders the subsequent use elsewhere on the Property a *lawful* nonconforming use. Applicant asserts that the pre-UDO mobile home use on the portion of the Property that became the R-4 Portion constitutes a preexisting nonconforming use on the entire Property – including the R-1 Portion.

This Court's decisions in *Hodge v. Zoning Hearing Board of West Bradford Township*, 312 A.2d 813 (Pa. Cmwlth. 1973), and *Colonial Park for Mobile Homes, Inc. v. New Britain Borough Zoning Hearing Board*, 290 A.2d 719 (Pa. Cmwlth. 1972), are instructive. In *Hodge*, the applicant property owners (the Hodges) challenged the zoning hearing board's decision denying their application, wherein they asserted that their mobile home park was a preexisting nonconforming use and sought an extension thereof. The Hodges owned approximately 137 acres on the east side of a dividing road and 188 acres on the dividing road's west side. In addition to operating an orchard on their property, the Hodges began installing mobile homes on both sides of the dividing road. Thereafter, the township adopted a zoning ordinance that permitted mobile home parks only in commercial districts by special exception. The Hodges' land was split-zoned, part residential and part commercial, with the mobile home park being partly in a residential district. The township subsequently amended the zoning map to encompass the Hodges' entire mobile home park in a commercial district. Thus, the commercial district encompassed land on both sides of the dividing road. Thereafter, the Hodges sought

14

a special exception for the mobile home park, which the zoning hearing board granted.

Subsequently, the Hodges filed an application with the zoning officer for permission to install 300 mobile homes on the land on the west side of the dividing road, largely in the zoned residential portion of the property. The application was denied and the Hodges appealed to the zoning hearing board, which, after conducting hearings, rejected the application. The zoning hearing board concluded that the majority of the mobile homes would be placed in a residential district where such homes were prohibited, and that the application did not constitute an expansion of a nonconforming use because the mobile home park on the west side of the dividing road where the mobile homes would be placed was a conforming use, and that the mobile home park on the east side of the dividing road had been a conforming use since the township had amended the zoning map. The Hodges appealed to the common pleas court, which affirmed the zoning hearing board's order.

On further appeal, this Court affirmed the trial court's order, reasoning:

> The question in this case . . . is whether or not a nonconforming use actually did exist, or if in fact the original construction in [the mobile home park] constituted a use compatible with the terms of the zoning ordinance. **It would be specious to contend that the doctrine of nonconforming use ensures one who engages in a permitted use in one zoning district the right to engage in the same use in an adjoining district where such use is prohibited**. Moreover, in determining whether or not a nonconforming use existed, "[o]nly physical evidence manifested in the most tangible and palpable form can bring about the application of nonconforming clauses in a zoning ordinance. **Before a supposed nonconforming use may be protected**, **it must exist somewhere outside the property owner's mind**."
> *Cook v. Bensalem T*[*wp.*] *Zoning B*[*d.*] *of Adjustment*, . . . 196 A.2d 327, 330 ([Pa.] 1964).

15

> As found by the [zoning hearing board and the common pleas court], and as supported by substantial evidence in the record, the Hodges' mobile home park on the west side of the [dividing] road, where the planned expansion is to take place, was in conformance with the zoning ordinance as of the date of its enactment. On the east side of the [dividing] road, where apparently no expansion is presently planned, part of the mobile home park was in conformance as of the date of enactment of the ordinance and the entire park was in conformance following the amendment of the ordinance on March 14, 1971. . . .
>
> We must agree with the [zoning hearing board] and the lower court, therefore, that the Hodges had not established a mobile home park as a nonconforming use, and that, because their mobile home park does in fact conform to the dictates of the zoning ordinance, there is no right of expansion available to them now.

*Hodge*, 312 A.2d at 817 (emphasis added; citation omitted).

Similarly, in *Colonial Park*, this Court rejected an appellant's contention that the use of his land as a mobile home park established a preexisting nonconforming use of land in an adjacent property. This Court concluded that there was no record evidence establishing that the mobile home park use was nonconforming. The *Colonial Park* Court explained:

> If in fact the appellant's use of its land for a mobile home park conformed to regulations of the [t]ownship . . . [the] appellant had no nonconforming use anywhere, and is left with the palpably specious contention that the doctrine of nonconforming use ensures one who engages in a permitted use in one zoning district the right to engage in the same use in an adjoining district where such use is prohibited.

*Colonial Park*, 290 A.2d at 722.

Here, at the time the UDO was adopted, the mobile home park was located on the R-4 Portion. Applicant's single-family residence was located on the R-1 Portion. Thus, the Township's UDO adoption did not render the existing mobile

16

home use (on the R-4 Portion) or the residence (on the R-1 Portion) nonconforming. Rather, the mobile home park located on the R-4 Portion and the residence located on the R-1 Portion were permissible uses under the UDO. Accordingly, **there was no nonconforming use occurring at the Property at the time the Township adopted the UDO**, and the fact that multiple mobile homes are permissible on the adjacent R-4 Portion does not confer on Applicant the "right to engage in the same use in an adjoining district where such use is prohibited."[13] *Hodge*, 312 A.2d at 817; *see also Colonial Park*.

---

[13] *See also O'Kane v. Zoning Hearing Bd. of Haverford Twp.*, 582 A.2d 716, 718 n.4 (Pa. Cmwlth. 1990) (it is an applicant's "burden to prove that [the] **portion** of [its] property was previously devoted to [its] nonconforming uses") (emphasis added); *but see R.K. Kibblehouse Quarries v. Marlborough Twp. Zoning Hearing Bd.*, 630 A.2d 937 (Pa. Cmwlth. 1993). In *Kibblehouse*, a property was split-zoned, with part of the property Limited Industrial (LI) and another part Residential-Agricultural (RA-1). The zoning hearing board denied the applicant's appeal of the township zoning officer's refusal to declare a quarry operation on the north side of the applicant's property as a valid nonconforming use and permit its expansion over the entire property, because it concluded that the quarrying activities were not nonconforming, since at the time of the township's adoption of its zoning ordinance, quarrying activities were entirely confined within the LI district, where quarrying was a permitted use. On appeal, the trial court reversed the zoning hearing board's decision. On further appeal, this Court concluded that the quarrying activities were a preexisting nonconforming use on the property's north side, explaining:

> In order to establish a prior nonconforming use, the landowner is required to provide objective evidence that the subject land was devoted to such use at the time the zoning ordinance was enacted. **The burden of proving the extent or existence of a nonconforming use rests with the property owner who would claim the benefit of the rights accorded property with that status**.

> The [zoning hearing] board concluded that [the applicant] did not establish a nonconforming use on the north side. The [zoning hearing] board reasoned that when the ordinance was enacted in 1970, the LI district was specifically delineated to encompass the entire quarrying operation and accommodate its reasonable future expansion throughout that same district.

> On appeal to the trial court, [the applicant] argued that it established the existence of a nonconforming use **by showing that a portion of the quarrying activity being conducted on the north side had not**

**B. Expansion or Relocation of a Nonconforming Use**

Assuming arguendo that, in the instant matter, the mobile home use on the R-4 Portion had become nonconforming upon the UDO's adoption, such preexisting use would not authorize mobile home placement for Applicant's use as a residence on the R-1 Portion either as a relocation or expansion of a nonconforming use. **A permitted preexisting nonconforming use is limited to the portion of the property upon which the use was located when the UDO was adopted and may not be moved.**[14] *See Bachman*; *Malakoff*; *Angelone*.

With respect to expansion of a nonconforming use, this Court's decision in *Overstreet v. Zoning Hearing Board of Schuylkill Township*, 412 A.2d 169 (Pa. Cmwlth. 1980), is instructive. Therein, owners of a property that housed a mobile home park on the western portion of their tract of land challenged the zoning hearing board's denial of their request to expand the mobile home use to the remainder of the tract. The *Overstreet* Court explained:

> The owners' [] argument takes issue with **the determination that their lawful nonconforming use extended only over the western section of the tract**, and contends that their right to expand that use extends to
>
> **been captured within the LI district at the time the ordinance was enacted**; **therefore**, **quarrying had also been occurring on land that would be zoned RA-1 by enactment of the ordinance**.

*Kibblehouse*, 630 A.2d at 941 (emphasis added; citations omitted). This Court agreed that the applicant had proven that a portion of the quarry was operating outside of the LI district, on the north side and, thus, a nonconforming use was occurring there at the time the zoning ordinance was enacted. Here, **unlike** in *Kibblehouse*, there is no record evidence that the R-1 Portion was ever used for a mobile home or for a second primary residence before the Township adopted the UDO.

[14] This Court is aware that this rule is subject to the doctrine of natural expansion. "The right to expand a nonconforming use to provide for the natural expansion and accommodation of increased trade 'is a constitutional right protected by the due process clause.'" *Jenkintown Towing Serv. v. Zoning Hearing Bd. of Upper Moreland Twp.*, 446 A.2d 716, 718 (Pa. Cmwlth. 1982) (quoting *Silver v. Zoning Bd. of Adjustment*, 255 A.2d 506-07 (Pa. 1969)). However, as explained below, Applicant did not present any evidence of expansion herein.

18

> **the whole of the tract**, **because the tract was devoted in its entirety to the mobile[]home operation**.
>
> The burden of proving the extent or existence of a nonconforming use rests on the property owner who would claim the benefit of the rights accorded property with that status. Further, that proof must be by way of objective evidence.
>
> Our review of the record reveals that the evidence before the referee was conflicting as to the extent of the nonconformity. Although [the owners] and one of his predecessors in interest testified with regard to peripheral or passive uses of the eastern portions of the tract, there was also considerable testimony to the effect that **such portion was unused in any manner whatsoever**. **The evidence does not compel a conclusion that the entire tract was devoted to the operation**; **we see no basis upon which to override the decision below that only the western half of the property was so devoted**.

*Id*. at 171-72 (emphasis added; citations omitted); *see also Piecknick v. S. Strabane Twp. Zoning Hearing Bd*., 607 A.2d 829, 836 (Pa. Cmwlth. 1992) ("If . . . the expansion is to occur over an area of the property not previously used in furtherance of the nonconforming use but is reasonably necessary to accommodate the requirements of the natural growth of the business, the [applicants] must obtain a variance before they can build."); *Llewellyn's Mobile Home Court, Inc. v. Springfield Twp. Zoning Hearing Bd.*, 485 A.2d 883, 886 (Pa. Cmwlth. 1984) ("[An applicant] is not entitled to an expansion as of right of the nonconforming use over property which has not been used to further the nonconforming purpose."); *Jenkintown Towing Serv. v. Zoning Hearing Bd. of Upper Moreland Twp.*, 446 A.2d 716 (Pa. Cmwlth. 1982). Thus, even if Applicant's mobile home use on the R-4 Portion was nonconforming, Applicant is not entitled to expand such preexisting nonconforming use absent evidence that the R-1 Portion had been used in furtherance of the proposed use, and the record is devoid of such evidence.

## C. Variance

Appellant contends that the ZHB correctly concluded that Applicant had failed to satisfy the UDO's variance requirements and that the ZHB's findings thereon are supported by substantial evidence. Notably, Applicant does **not** challenge the ZHB's variance denial <u>at all</u> before this Court. **Applicant does not respond to the Township's specific argument in its brief that the ZHB properly denied the variance**, **and does not otherwise discuss or challenge the denial of the variance in his responsive brief**.[15] *See* Applicant Br. at 2. The entirety of Applicant's brief addresses the nonconforming use issue and the trial court's *sua sponte* determination.

With respect to Applicant's requested variance, Section 404.A.1 of the UDO states:

> The variance procedure is intended to provide a narrowly circumscribed means by which relief may be granted from unforeseen particular applications of sections of this Chapter not relating to subdivision requirements. **When such hardships may be more appropriately remedied**, **if at all**, **pursuant to other provisions of this Chapter**, **the variance procedure is inappropriate**. No nonconforming use of neighboring lands, structures, or

---

[15] Pennsylvania Rule of Appellate Procedure (Rule) 2112 states in relevant part:

> The brief of the appellee, except as otherwise prescribed by these rules, need contain only a summary of argument and the complete argument for appellee, and may also include counter-statements of any of the matters required in the appellant's brief as stated in [Rule] 2111(a). Unless the appellee does so, **or the brief of the appellee otherwise challenges the matters set forth in the appellant's brief**, **it will be assumed the appellee is satisfied with them**, **or with such parts of them as remain unchallenged**.

Pa.R.A.P. 2112 (emphasis added). *See, e.g.*, *Twyman v. Workers' Comp. Appeal Bd. (Pa. Dep't of Transp.)*, 720 A.2d 780, 783 n.5 (Pa. Cmwlth. 1998) (wherein this Court noted that because the appellee's brief did not contain a Counter-Statement of Questions Involved, it is "assumed that [the appellee] is satisfied with the issues raised by the appellant and any others remain unchallenged in the proper manner in accordance with [Rule] 2112").

buildings in the same district **and no permitted or nonconforming uses of lands, structures, or buildings in other districts shall be considered grounds for issuance of a variance**. Upon appeal from an order or determination of the Zoning Officer or upon application, the [ZHB] shall have the power to vary or adjust the strict application of rules and requirements in accordance with the provisions of the Pennsylvania Municipalities Planning Code,[16] provided that the following findings are made where relevant in a given case:

a. That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

b. That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

c. That such unnecessary hardship has not been created by the applicant.

d. That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

e. That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

---

[16] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

21

UDO § 404.A.1, R.R. at 68a-69a (emphasis added). The law is well established that "[v]ariances are generally granted only under exceptional circumstances and an **applicant must satisfy <u>all</u>** criteria necessary for the grant of a variance." *Larsen v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 654 A.2d 256, 261 (Pa. Cmwlth. 1995), *aff'd*, 672 A.2d 286 (Pa. 1996) (bold and underline emphasis added).

In the instant matter, the ZHB concluded that "Applicant [] did not satisfy **any** of the[] [UDO variance] requirements." R.R. at 371a (emphasis added). The ZHB correctly noted that regarding the first factor, Applicant did not present any evidence that the landslide on the R-4 Portion constituted an unnecessary hardship on the **entire** R-4 Portion.[17] *See* R.R. at 371a. The mobile home park on the R-4 Portion still operates, just with three fewer homes. This Court has held that **where property is being used productively**, **a mere showing of economic hardship or that a property could be utilized more profitably is insufficient to support the grant of a variance**. *See Society Created to Reduce Urban Blight (SCRUB) v. Zoning Bd. of Adjustment of City of Phila.*, 771 A.2d 874 (Pa. Cmwlth. 2001). Applicant's inability to use the R-4 Portion for Applicant's desired nine, rather than six, mobile homes is not sufficient to support the grant of the variance. The ZHB further reasoned that Section 404.A.1 of the UDO requires that, to the extent any hardship does exist, it must be remedied by subdividing the R-1 Portion rather than by variance.[18] *See* R.R. at 371a.

---

[17] Notwithstanding, the Dissent states: "In any case, I would not affirm the [ZHB's] denial of [Applicant's] request for a variance to allow the mobile home, displaced from its prior location by a landslide, to be moved elsewhere on his property." *Omatick* (Leavitt, S.J., Concurring/Dissenting), slip op. at 5.

[18] The Dissent mischaracterizes the ZHB's reasoning as follows:

> [T]he [ZHB] reasoned that [Applicant's] hardship "can be remedied by subdividing the [P]roperty and complying with the [z]oning [o]rdinance instead of seeking a variance." [R.R.] at 372a []. I

Appellant contends that Applicant "did not present any evidence of expense as a reason for not subdividing his property, ultimately testifying that he just doesn't 'want to subdivide' (R.[R. at] 367a; R.[R. at] 271a)."[19] Appellant Br. at 14. In fact, Applicant does not argue in his brief to this Court that the ZHB erred when it concluded that he had not demonstrated the necessary hardship to support the grant of a variance.[20]

> disagree that, as a matter of law, the subdivision alternative disposed
> of the [ZHB's] hardship inquiry.

*Omatick* (Leavitt, S.J., Concurring/Dissenting), slip op. at 6. Rather, the ZHB expressly concluded:

> 20. Courts addressing nonconforming use variances have uniformly assumed, with little or no discussion, the existence of the first requirement, requiring "unique physical . . . conditions." *Richards v. Borough of Coudersport Zoning [Hearing] Bd.*, 979 A.2d 957, 967 (Pa. [Cmwlth.] 2009). However, in this case, **there is no preexisting nonconforming use**, **so the first requirement is not** [presumed] **satisfied**.

> 21. In addition, **Applicant** [] **did not present any evidence** that the 2018 landslide constituted an unnecessary hardship affecting the entire portion of the Property located in the R-4 zoning district.

R.R. at 371a (emphasis added). Despite the ZHB's above-quoted Findings of Fact, the Dissent asserts: "[T]he [ZHB] did not address the hardship caused by the unstable soil on the land that required three of the nine mobile homes to be removed after a landslide. The [ZHB] then ignored [Applicant's] evidence that one of the three was moved to a place that involved the least disturbance to and impact on the environment." *Omatick* (Leavitt, S.J., Concurring/Dissenting), slip op. at 7.

[19] The ZHB found as fact that Applicant did not submit an application to subdivide the Property, that "[n]o credible evidence was submitted that subdivision would be cost prohibitive or impractical[,]" and that Applicant "testified that he did not want to subdivide the Property because his daughter, at some point, would inherit it all." R.R. at 367a. It was for the ZHB as fact-finder to determine credibility, weigh the evidence, and discern Applicant's true motivation in refusing to subdivide the Property.

[20] Notwithstanding, the Dissent maintains that evidence on the subdivision was required and *sua sponte* raises its own factual questions pertaining thereto, such as whether Applicant would "be subject to roll-back taxes" if he subdivides. *Omatick* (Leavitt, S.J., Concurring/Dissenting), slip op. at 6. Said issues are not before this Court as Counsel made it clear that Applicant would not consider subdividing until *after* he received a decision from the ZHB. *See* R.R. at 248a.

With respect to the second factor, the ZHB correctly observed that as evidenced by the Property's current use (a residence currently and legally exists on the R-1 Portion, and a mobile home park legally exists on the R-4 Portion), the Property **can** be developed in strict conformity with the UDO. *See id.* The ZHB further concluded that Applicant did not meet the third factor because, although the landslide was responsible for the removal of the mobile homes on the R-4 Portion, there was no evidence demonstrating that the mobile home **must** be moved to the R-1 Portion, as opposed to another location on the R-4 Portion.[21] *See* R.R. at 372a. Instead, that was Applicant's choice. Regarding the fourth factor, the ZHB found that allowing two residences on the same property, which is explicitly prohibited by the UDO, would alter the essential character of the neighborhood in the R-1 District. Applicant offered no evidence to show otherwise. *See id.* Finally, with respect to the fifth factor, the ZHB correctly concluded that granting a variance would not "represent the least modification possible of the regulation in issue[,]" since the Property could be subdivided without modifying the regulation at all. R.R. at 69a.[22]

"It is the function of the [**ZHB**] **to determine whether the evidence satisfies the criteria for granting a variance**. The [ZHB], as fact-finder, is the sole judge of credibility." *Marshall v. City of Phila.*, 97 A.3d 323, 331 (Pa. 2014)

---

Further, the record is devoid of any mention of roll-back taxes, and it is not the ZHB's or this Court's role to advocate for a party.

[21] The Dissent asserts that "[t]here was no evidence that there was space remaining in that zoning district after the landslide. Even so, [Applicant] was not required to prove a negative." *Omatick* (Leavitt, S.J., Concurring/Dissenting), slip op. at 7. Contrary to the Dissent's characterization, requiring Applicant to demonstrate that the subject zoned area is too small to accommodate a mobile home at a different location thereon is not "requir[ing Applicant] to prove a negative[,]" but rather, requires that Applicant must satisfy evidentiary requirements supporting Applicant's hardship claim.

[22] The ZHB found that Applicant did not submit an application to subdivide the Property, and observed that no credible record evidence was submitted showing that subdivision would be cost prohibitive or impractical. Rather, Applicant chose not to subdivide the Property because his daughter would, at some point, inherit all of the Property. *See* R.R. at 367a.

(emphasis added; citation omitted). The ZHB has the "exclusive authority to determine matters of witness credibility and evidentiary weight . . . ." *Pham v. Upper Merion Twp. Zoning Hearing Bd.*, 113 A.3d 879, 893 (Pa. Cmwlth. 2015). Given that Applicant had the burden to satisfy *all* the variance criteria and failed to do so, the ZHB properly denied the variance.

## II. Trial Court's Sua Sponte Consideration

Appellant next contends that the trial court erred when it, *sua sponte*, declared that the relocated mobile home was not a *building* as defined in the UDO, and reversed and vacated the ZHB's Decision based on that conclusion. Explaining that the "trial court is unable to reconcile the plain language of [Section 1202 of the UDO] with the interpretation the parties and the ZHB have given to it[,]" the trial court examined the UDO's restriction limiting principal buildings on Township properties. Specifically, the trial court considered that Section 1202 of the UDO prohibits the use of "more than one principal **building** . . . for residential purposes located on one property[.]" R.R. at 121a (emphasis added). It further examined Section 202 of the UDO which defines the term *principal building*, in relevant part, as "[t]he **building** in which the primary use of the lot is conducted," R.R. at 36a (emphasis added), and *building* as "[a]ny structure, with walls and a roof, designed, built, and used for the shelter, protection, or enclosure of persons, animals, or property, and **which is permanently affixed to the land**." R.R. at 21a (emphasis added). The trial court contrasted the definition of *building* in Section 202 of the UDO with the UDO's definition of *mobile home*, which is "[a] transportable, single[-]family dwelling intended for permanent occupancy . . . constructed so that it may be used with or without a permanent foundation." R.R. at 34a. Based thereon, the trial court concluded that, since there was no record evidence that the mobile home was "permanently affixed to the land" and, therefore, was not a *building* as defined

25

in the UDO, its presence on the R-1 Portion did not violate Section 1202 of the UDO.

Importantly, neither Applicant nor any other party raised or argued this issue to the ZHB or the trial court.[23] This Court declared in *Department of Transportation, Bureau of Traffic Safety v. Malone*, 520 A.2d 120 (Pa. Cmwlth. 1987),

> while it is among the functions of the trial court to clarify the issues, that function does not cast it in the role of advocate. Accordingly, [the Pennsylvania Supreme Court in *Hrivnak v. Perrone*, 372 A.2d 730 (Pa. 1977),] held that it [is] error for a trial judge to introduce theories not raised by the parties.

*Malone*, 520 A.2d at 122.

> [I]t has long been held that a court may not raise an issue *sua sponte* that does not involve the court's subject matter jurisdiction. "*Sua sponte* consideration of an issue deprives counsel of the opportunity to brief and argue the issue[] and the [zoning hearing b]oard of the benefit of counsel's advocacy." *Miller v. Workmen's Comp. Appeal Bd. (Giant Food Stores, Inc.)*, 715 A.2d 564, 566 (Pa. Cmwlth. 1998) (quoting *Follett v. Workmen's Comp. Appeal Bd. (Mass. Mut. Ins. Co.)*, . . . 551 A.2d 616, 621 ([Pa. Cmwlth.] 1988) . . . ). Moreover, "raising issues *sua sponte* after the record is closed and without notice to the parties constitutes a due process violation." [*Malone*, 520 A.2d at 122].

*Orange Stones Co. v. Borough of Hamburg Zoning Hearing Bd.*, 991 A.2d 996, 999 (Pa. Cmwlth. 2010) (citation omitted). Because neither Applicant nor Appellant raised the issue of whether the mobile home was a *building* under the UDO, the trial court erred by raising that issue *sua sponte* and basing its decision thereon.

---

[23] Where a party fails to raise an issue before a zoning hearing board or in its notice of appeal or brief to the trial court, the party waives the issue. *See Carroll Sign Co., Inc. v. Adams Cnty. Zoning Hearing Bd.*, 606 A.2d 1250 (Pa. Cmwlth. 1992).

26

For all of the above reasons, the trial court's order is reversed.[24]

_____
ANNE E. COVEY, Judge

---

[24] Given this Court's disposition of the first two issues, it does not reach Appellant's third issue.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jeffrey A. Omatick | : | |
| | : | |
| v. | : | |
| | : | |
| Cecil Township Zoning | : | |
| Hearing Board | : | |
| | : | |
| v. | : | |
| | : | |
| Cecil Township Board of | : | |
| Supervisors, | : | No. 920 C.D. 2021 |
| Appellant | : | |

# O R D E R

AND NOW, this 30th day of November, 2022, the Washington County Common Pleas Court's July 19, 2021 order is reversed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jeffrey A. Omatick | : | |
| | : | |
| v. | : | No. 920 C.D. 2021 |
| | : | Argued: May 16, 2022 |
| Cecil Township Zoning | : | |
| Hearing Board | : | |
| | : | |
| v. | : | |
| | : | |
| Cecil Township Board of | : | |
| Supervisors, | : | |
| Appellant | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

CONCURRING AND DISSENTING
OPINION
BY SENIOR JUDGE LEAVITT         FILED: November 30, 2022

        The Court of Common Pleas of Washington County (trial court) concluded that neither the Cecil Township Board of Supervisors nor the Cecil Township Zoning Hearing Board (Zoning Board) (collectively, Cecil Township) presented any evidence that the mobile home in question was a building, let alone a principal building, subject to the Township's Unified Development Ordinance.[1] On that basis, the trial court sustained the appeal of Jeffrey A. Omatick (Landowner) challenging the notice of violation issued by Cecil Township. I concur in the panel's holding that the trial court erred in deciding Landowner's appeal on an issue not raised by Landowner or Cecil Township. Given that holding, I would remand the matter to the trial court to decide the issues that were presented to the trial court but

---

[1] Cecil Twp., Washington Cnty., Pa., UNIFIED DEVELOPMENT ORDINANCE §§101-1904 (2007).

disregarded altogether. Instead, the majority decides those issues for the trial court. Respectfully, I dissent from this order on procedural and substantive grounds.

The Local Agency Law provides that a person "aggrieved by an adjudication of a local agency" shall appeal to the court of common pleas where the local agency is located. 2 Pa. C.S. §752. The court of common pleas' review determines, *inter alia*, whether a complete record was made by the local agency, which can only be resolved with reference to the discrete legal questions in the appeal, as may arise under the Pennsylvania or the United States Constitution, a statute, or an ordinance. 2 Pa. C.S. §754(b). If the record is incomplete on a particular issue or a finding is not supported by substantial evidence, the trial court may remand the matter to the local agency or conduct additional evidentiary hearings itself. 2 Pa. C.S. §754(a). Where the court does not affirm the local agency, the court may reverse and remand. 2 Pa. C.S. §754(b) (citing 42 Pa. C.S. §706). Consistent with this legislative paradigm, our general rule has been to order a remand where the trial court has overlooked, or refused to address, the issues raised by the appellant.[2]

A trial court must be allowed an opportunity to correct its errors, including legal errors, so that it may reconsider the claims anew before those legal

_____

[2] There have been recent anomalies. In *AUUE, Inc. v. Borough of Jefferson Hills Zoning Hearing Board* (Pa. Cmwlth., No. 871 C.D. 2020, filed August 9, 2021) (unreported), this Court reversed the trial court, which had affirmed a decision of a zoning hearing board. In doing so, we decided another issue raised to the trial court but not addressed because of its erroneous conclusion on the first issue. In *Herbert v. West Reading Borough Zoning Hearing Board* (Pa. Cmwlth., No. 1113 C.D. 2020, filed October 14, 2021) (unreported), this Court addressed the code enforcement officer's authority to issue an enforcement notice and the validity of that notice notwithstanding that the trial court did not address the issue because it was preserved at the trial court level and briefed by the parties.

In each case, the trial court addressed at least one issue raised by the landowner. Here, the trial court did not address either issue raised by Landowner.

claims are presented to an appellate court. *See, e.g.*, *Cook v. City of Philadelphia Civil Service Commission*, 201 A.3d 922, 929 (Pa. Cmwlth. 2019). This jurisprudential policy has been established by the Pennsylvania Supreme Court[3] in decisions "consistently" holding that "issues not raised or passed upon in the court of original jurisdiction should *not be considered on appeal*," and its refusal to "depart[] from that rule." *Chwatek v. Parks*, 299 A.2d 631, 633 (Pa. 1972) (emphasis added).[4]

For example, in *Department of Environmental Resources v. Marra*, 594 A.2d 646, 648 (Pa. 1991), this Court granted an injunction requiring the landowner to disclose the location of paint solvents and waste removed from his property, and the landowner appealed. The Supreme Court agreed with the department that the appeal was not ripe for review, explaining:

> *The jurisprudential policies* behind the [department's] assertion that the case is not ripe for decision, ultimately, *are that lower courts must be given an opportunity to correct errors before*

---

[3] "[T]he setting of jurisprudential policy is principally the task of the Pennsylvania Supreme Court." Donald J. Harris, *Due Process v. Helping Kids in Trouble: Implementing the Right to Appeal from Adjudications of Delinquency in Pennsylvania*, 98 Dickinson Law Review 209, 210 (Winter, 1994). In *In re Stout*, 559 A.2d 489, 495, 497 (Pa. 1989), the Supreme Court emphasized its role in setting such policy, noting "we are charged with charting a definite course of action for the judiciary, and to select our method of action from various alternatives at hand and in light of these conditions to guide and determine the present and future course of this branch of government."

[4] The majority states that "in zoning cases, where a complete record is made by the [Zoning Board], the trial court reviews the [Zoning Board's] decision in an appellate capacity." Majority at 9 n.12 (emphasis omitted). In zoning board appeals, the trial court also has the discretion to hold a hearing to take additional evidence and make findings of fact. 2 Pa. C.S. §754(a) ("the court may hear the appeal *de novo*, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court."). Here, the trial court did not exercise its authority to take additional evidence because it decided that the true issue was whether a mobile home is even a building, not whether it was a principal building. Had the trial court addressed the actual issues raised on appeal, it may have decided to take additional evidence.

*alleged errors are addressed by appellate courts* and that courts may only address cases which have reached a procedural posture in which the dispute between the parties is clearly extant and certainly defined.

*Id.* (emphasis added). Likewise, here, the majority decides issues not ripe for our review.

This Court and the Superior Court have long followed this jurisprudential policy of allowing the trial court to correct its errors. In *Therres v. Zoning Hearing Board of Borough of Rose Valley*, 947 A.2d 226 (Pa. Cmwlth. 2008), our Court affirmed the trial court's order to quash an appeal. We noted, further, that had we held otherwise, the appropriate remedy was

> to remand the matter to the trial court for consideration of the merits. The arguments as to whether the [zoning hearing board] abused its discretion go to the merits of the underlying appeal, *and they have not yet been addressed by the trial court.*

*Id*. at 233 n.6 (emphasis added). Similarly, in *Cook*, where the trial court abused its discretion by *sua sponte* dismissing the appellant's local agency appeal for failing to file a timely brief, this Court remanded the matter to the trial court to address the issues in the first instance, citing the general policy set out in *Marra*. *Cook*, 201 A.3d at 929. In *Branton v. Nicholas Meat, LLC*, 159 A.3d 540, 562 n.21 (Pa. Super. 2017), where the trial court did not address an issue in its opinion granting summary judgment, the Superior Court remanded the matter so that the trial court could decide the issue in the first instance.

Remanding where a trial court has failed to address an issue allows the court to correct its error and is consistent with the principle of judicial economy. This has been explained as follows:

> Consider . . . the scenario of the "apparently overlooked argument." That is a decision that appears, based on the opinion

MHL-4

below, to have overlooked one of the losing party's facially plausible contentions. It would be time-consuming for the Court to figure out whether the overlooked contention actually has merit and would materially affect the outcome . . . but it is easy enough to vacate and remand for the lower court to address the matter (or clarify that it already did).

Aaron-Andrew P. Bruhl, *The Remand Power and the Supreme Court's Role*, 96 Notre Dame Law Review 171, 183 (2020). The treatise Standard Pennsylvania Practice states:

> The application of an erroneous legal standard may require a remand for a proper determination by the trial court.[] The reaching of *an incorrect legal determination, leaving an essential matter unresolved, may also require a remand* for a limited purpose.[]

17 STANDARD PENNSYLVANIA PRACTICE 2d §92:103 (2022) (footnotes omitted and emphasis added). Here, the trial court left two essential matters unresolved, *i.e.*, the two issues raised by Landowner.

The appropriate prudent approach is to follow the established practice of our Supreme Court, this Court, and our sister appellate Court, and allow the trial court an opportunity to correct its error by addressing the issues raised by Landowner. In *Orange Stones Co. v. Borough of Hamburg Zoning Hearing Board*, 991 A.2d 996 (Pa. Cmwlth. 2010), the trial court, as in this case, improperly decided a land use appeal on an issue raised by the court *sua sponte*. We reversed and remanded the matter to the trial court for its decision on the issues raised. I would do so here as well.

In any case, I would not affirm the Zoning Board's denial of Landowner's request for a variance to allow the mobile home, displaced from its prior location by a landslide, to be moved elsewhere on his property. Rather, I would reverse the Zoning Board.

First, I reject the Zoning Board's stated conclusion of law that because Landowner can subdivide his 40-acre property to create a separate lot for the mobile home, he cannot show the hardship needed for a variance. Specifically, the Zoning Board reasoned that Landowner's hardship "can be remedied by subdividing the [p]roperty and complying with the [z]oning [o]rdinance instead of seeking a variance." Reproduced Record at 372a (R.R. __). I disagree that, as a matter of law, the subdivision alternative disposed of the Zoning Board's hardship inquiry. Rather, evidence on the subdivision option was required, and none was offered. Here, 36.44 acres of Landowner's 41.44 total acres are enrolled in the Clean and Green program established in the Pennsylvania Farmland and Forest Land Assessment Act of 1974 (Act).[5] R.R. 168a. And, "[a] landowner who participates in the Clean and Green program may be subject to roll-back taxes[6] if he 'conducts [a] split-off' of the land." *Maula v. Northampton County Division of Assessment*, 149 A.3d 442, 445 (Pa. Cmwlth. 2016) (citing Section 6(a.1)(1) of the Act, 72 P.S. §5490.6(a.1)(1)). Landowner could be required to pay a very high price for a subdivision that creates a lot that is less than 10 acres in size, which undermines the Zoning Board's breezy dismissal of Landowner's claim of hardship.[7]

---

[5] Act of December 19, 1974, P.L. 973, *as amended*, 72 P.S. §§5490.1-5490.13 (Act). The Act is commonly known as the Clean and Green program.

[6] A roll-back tax is:

> The amount equal to the difference between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had that land been valued, assessed and taxed as other land in the taxing district in the current tax year, the year of change, and in six of the previous tax years or the number of years of preferential assessment up to seven.

Section 2 of the Act, 72 P.S. §5490.2.

[7] The majority notes that Landowner did not raise the issue of roll-back taxes. Landowner did raise his enrollment in the Clean and Green program at the hearing, and roll-back taxes are an integral

**(Footnote continued on next page…)**

Second, the Zoning Board did not address the hardship caused by the unstable soil on the land that required three of the nine mobile homes to be removed after a landslide. The Zoning Board then ignored Landowner's evidence that one of the three was moved to a place that involved the least disturbance to and impact on the environment. R.R. 171a, 203a. The other two mobile homes were simply removed from Landowner's property. The failure to address evidence relevant to hardship constitutes error and abuse of discretion by the Zoning Board.

Third, the Zoning Board erred in concluding that it was Landowner's burden to show that the mobile home could not be moved elsewhere in the one-acre part of his property that formerly held nine mobile homes. To create a mobile home district, Cecil Township "drew [] lines" around the 9 existing mobile homes on Landowner's property sited next to a road that bordered his 42-acre parcel.[8] Landowner Brief at 5. There was no evidence that there was space remaining in that zoning district after the landslide. Even so, Landowner was not required to prove a negative. *See Commonwealth v. 1997 Chevrolet*, 106 A.3d 836, 869 (Pa. Cmwlth. 2014) ("a party required to prove a negative is saddled with a 'virtually impossible burden'" and "courts generally 'do not require litigants to prove a negative because it cannot be done'") (citations omitted). Landowner showed a hardship and that a relocation of the mobile home a short distance from its original site was the minimal relief needed. That is all that was required to meet his burden.

Citing PA. R.A.P. 2112, the majority states that Landowner's brief to the Court did not adequately respond to Cecil Township's argument in support of

---

part of the Clean and Green program. The Zoning Board has to consider the implications of Landowner's participation in the Clean and Green program before dismissing Landowner's hardship claim on the basis of a subdivision option.

[8] Although Landowner challenges the zoning ordinance elimination of the right to have nine mobile homes on his property on constitutional grounds, he did not raise the issue of "spot zoning."

the Zoning Board's denial of the variance. Landowner prevailed at the trial court level and, as expected, offered full-throated support of the trial court's determination in his favor. Cecil Township chose to raise issues in its brief to this Court beyond the trial court's error. A remand decision should not turn on how the appellant has chosen to pursue its appeal. Had Cecil Township limited its brief to the error of the trial court, a remand would be the only possible outcome. The court, not the parties, should make the decision on remand.

The majority cites *41 Valley Associates v. Board of Supervisors of London Grove Township*, 882 A.2d 5, 17 (Pa. Cmwlth. 2005), for the proposition that this Court reviews the zoning hearing board's decision, not the trial court's decision, and thus, we can decide the merits of the zoning board's decision "on the existing record." In *41 Valley Associates*, the issue was whether the trial court erred. We affirmed the trial court on other grounds; here, the majority reverses the trial court on grounds it has not yet considered. *41 Valley Associates* does not stand for the proposition that this Court should decide the merits of a local agency appeal in place of a court of common pleas.

The Local Agency Law provides, in pertinent part, that "[a]ny person aggrieved by an adjudication of a local agency . . . shall have the right to appeal" to a court of common pleas. 2 Pa. C.S. §752. The Judicial Code then provides for an appeal to this Court from an order of a court of common pleas that involves the enforcement of an ordinance. 42 Pa. C.S. §762(a)(4). By deciding a local agency appeal in place of the court of common pleas, we deny an appellee his full appellate rights, which includes review by the trial court.[9]

---

[9] A right of appeal is guaranteed by the Pennsylvania Constitution, which provides:
**(Footnote continued on next page…)**

Accordingly, I would reverse the trial court and remand the matter to the trial court.

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law.

PA. CONST. art. V, §9.

MHL-9